**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**

04 MAY -4  PM 3: 40

**CASE NO.:**

**UNITED VAN LINES, LLC,**         *8:04-CV-1009-T-23MSS*

   **Plaintiff,**

**v.**

**RICHARD FIELDS and**
**JESSICA FIELDS**

   **Defendants.**

---

### COMPLAINT FOR DECLARATORY JUDGMENT

---

Plaintiff United Van Lines, LLC ("United") hereby complains against Defendants

Richard Fields and Jessica Fields (collectively referred to as "the Fields") as follows:

1.      United is a limited liability corporation organized and existing under the laws

of the State of Missouri, with its principal place of business in Fenton, Missouri.

2.      The Fields were residents of 4969 Elm Gate, Orchard Lake, Michigan.  In

June, 2003, the Fields contracted with United for the transportation of their household

goods and personal property to Sarasota, Florida.  United is under the belief that the Fields

currently reside at 7615 Sanderling Road, Sarasota, Florida.

3.      As more particularly set forth below, United presents an actual controversy

within the meaning of 28 U.S.C. §2201 and within this Court's jurisdiction.

**ORIGINAL**

4.     This Court has federal question jurisdiction based on the rights and liabilities of the parties under a contract for the interstate transportation of property pursuant to the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. §14706, and by virtue of 28 U.S.C. §1331 and §1337, as confirmed in **Thurston Motor Lines v. Rand**, 460 U.S. 583 (1983) and 28 U.S.C. §1367.  This action seeks remedies which require this Court to interpret the Interstate Commerce Act, 49 U.S.C. §14706, §14705, §13706 and §13702, an interstate Bill of Lading and United's tariffs [published pursuant to 49 U.S.C. §13702(c)]. The amount in controversy exceeds the $10,000.00 minimum threshold required by 28 U.S.C. §1337.

5.     Venue is proper in this District pursuant to 28 U.S.C. §1391(b) in that a substantial part of the events or omissions giving rise to this controversy occurred in this district.

## GENERAL ALLEGATIONS

6.     United is a motor carrier authorized by the Surface Transportation Board to transport household goods in interstate commerce pursuant to the provisions of the Interstate Commerce Act.

7.     On or about June 27, 2003, Corrigan Moving Systems, Inc., acting as a disclosed household goods origin agent of United, issued two Household Goods Bills of Lading to the Fields, both of which used United's reference number 511-347-3 (the "Bills of Lading"), in Michigan for household transportation services, including the interstate transport of the Fields' household goods and personal property from Orchard Lake, Michigan to Sarasota, Florida.

8.     The Fields' household goods moved in interstate commerce under the United Bills of Lading numbered 511-347-3.  The relevant terms and conditions are contained in the Bills of Lading attached as Exhibit "A."  The Bills of Lading incorporate United's applicable published household goods tariffs which were in effect when the Fields' household goods were shipped.

9.     Pursuant to the terms of the Bills of Lading, the Fields' household goods and personal property were picked up and loaded on or about June 27, 2003.

10.    The Fields' goods were thereupon transported to Sarasota, Florida in interstate commerce.

11.    A portion of the goods ("the main shipment") was delivered to 7615 Sanderling Road, Sarasota, Florida, on or about July 1, 2003.  Delivery was acknowledged by Jessica Fields.

12.    The remainder of the goods ("the overflow shipment") was delivered to two storage units in Sarasota on or about July 7, 2003.  Delivery was acknowledged by Richard Fields.

13.    Defendants authorized initial payment in the amount of $18,739.99 and an additional payment of $1,309.53 by credit card for the interstate transportation of their household goods.  A copy of the Credit Card Authorization Form is attached hereto as Exhibit "B".

14.    The transportation charges accruing from the interstate transportation of Defendants' property under United's tariff initially totaled $19,494.31. A copy of United's invoice number U-0511-00347-3-01, dated July 22, 2003, is attached hereto as Exhibit "C".

15.     A credit of $555.21 was issued to the Fields to correct for the actual charges accrued, which appear on United's July 22 invoice, attached hereto as Exhibit "C".

16.     On or about July 23, 2003, Defendant Richard Fields submitted a request to his credit card company that the credit card payments be withdrawn and removed from his account.  Copies of the Customer Statements of Disputed Items are attached hereto as Composite Exhibit "D".

17.     On or about October 8, 2003, an additional credit was issued by United to the Fields in the amount of $1,043.06, to reflect adjustments made to the outstanding tariff charges, and an additional $919.00 valuation charge was imposed, which changed the total amount due to $19,370.25.  See Invoice dated October 8, 2003, attached hereto as Exhibit "E".

18.     On or about December 12, 2003 and December 24, 2003, Plaintiff received notification of Defendants' request that their credit card payments be charged back, with the $1,309.53 charge reduced to $266.47 to reflect the October 8, 2003 adjustment.  See ICA Mastercard Chargeback Forms, attached hereto as Composite Exhibit "F".

19.     To date, this chargeback dispute has not been resolved.

20.     The transportation services for carriage of Defendants' personal property and household goods were performed in accordance with the Bills of Lading and United's tariff provisions incorporated therein, which are duly maintained in a published tariff as required by the Interstate Commerce Act.

21.     Defendants are the actual and beneficial owners or legal possessors, shippers, consignors and consignees of the personal property for which the interstate transportation services were provided by United, pursuant to the attached Bills of Lading.

-4-

In accordance with 49 U.S.C. §13706 and §13702(a), United is obligated to collect, and Defendants are obligated to pay, the full applicable tariff charges due.

22.     As reflected in the attached Bills of Lading (Exhibit "A"), Defendants accepted their personal property and household goods upon delivery in Sarasota, Florida on and after July 1, 2003.

23.     United has performed all of the terms and conditions set forth in the attached Bills of Lading, and is entitled to collect $19,370.25 as tariff transportation charges.

24.     Section 6, on the reverse sides of the Bills of Lading attached hereto as Exhibit "A", states in relevant part:

> As a condition precedent to recovery, a claim for any loss or damage, injury or delay, must be filed in writing with the carrier within nine (9) months after delivery to consignee as shown on face hereof. . . .  Where a claim is not filed or suit is not instituted thereon in accordance with the foregoing provisions, carrier will not be liable and such a claim will not be paid.

25.     On or about March 23, 2004, United sent the Fields a letter chronicling its repeated warnings to the Fields regarding the nine month time limit for filing claims and informing them that the deadline for filing a claim with United would soon expire. A copy of this letter is attached hereto as Exhibit "G".

26.     On or about March 29, 2004, the Fields submitted documents to United which do not constitute a claim under 49 C.F.R. § 370.3.  Copies of these documents are attached hereto as Exhibit "H".

27.     On or about March 29, 2004, United informed the Fields through a letter sent via overnight delivery that the documents they submitted (Exhibit "H") did not constitute a claim.  A copy of this letter is attached hereto as Exhibit "I".

28.     Defendants did not file any documents in response to Exhibit "I", United's March 29, 2004 letter.

29.     Defendants did not file a claim with United within nine months after the delivery of their household goods.

## REQUEST FOR RELIEF

30.     The allegations of paragraphs 1 through 29 of this Complaint are hereby realleged and incorporated herein by reference.

31.     United is not only entitled to collect, but is required to collect, $19,370.25 for the transportation of the Fields' household goods under federal law and United's tariff.

32.     The Carmack Amendment, 49 U.S.C. §14706, exclusively governs the liability of motor carriers providing interstate household goods transportation services subject to the jurisdiction of the Surface Transportation Board.

33.     Pursuant to the Bills of Lading and the Carmack Amendment, all claims must be filed within nine months of delivery.

34.     The Fields did not file a proper claim within nine months of delivery, and are therefore barred from asserting any claims for loss, damage or delay.

35.     Even if a claim had been timely filed, United cannot liable to the Fields for any amount in excess of the declared valuation of the shipment or Defendants' actual loss, if any, whichever is less.

36.     United respectfully requests a declaration by this Court of the rights and liabilities of the parties under the Bills of Lading, United's published tariff and the Carmack Amendment.

**WHEREFORE**, Plaintiff United Van Lines, LLC respectfully requests that this Court:

(1)      Declare that Plaintiff is entitled to collect $19,370.25 from Defendants for the interstate transportation of the Defendants' household goods;

(2)      Declare that Plaintiff is not liable to Defendants for loss, damage and/or delay due to Defendants' failure to file a proper claim for loss and/or damage within nine months after delivery of Defendants' household goods;

(3)      Declare that Plaintiff's liability, if any, is exclusively governed by federal law, the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. §14706, and case law thereunder and the condition precedent that Defendants are able to meet their burden of proof under the Carmack Amendment to the Interstate Commerce Act;

(4)      Declare that Plaintiff's liability, if any, is exclusively governed by federal law, the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. §14706, which limits liability of common carriers to "the actual loss or injury to the property";

(5)      Declare that Plaintiff's liability, if any, is limited to the declared or released rate valuation in accordance with the Bills of Lading and Plaintiff's tariffs governing the subject shipment as provided for by 49 U.S.C. §14706 and Defendants' ability to meet their Carmack Amendment burden of proof;

(6)      Declare that Plaintiff's liability, if any, is limited  by the Bills of Lading which provides that the carrier shall not be liable for any loss, damage or delay caused by or resulting:

      (a) From an act, omission or order of shipper;

      (b) From defect or inherent vice of the article, ... ;

(7)     Declare that United is not liable to Defendants for any state common law or statutory remedies under Florida law seeking damages, including punitive damages, for allegedly unfair and deceptive trade practices, bad faith claims settlement practices, breach of an implied covenant of good faith, and/or related or similar remedies;

(8)     Resolve any other questions or controversies that might remain between Plaintiff and Defendants;

(9)     Award all costs of this action, including attorneys' fees, if allowed by law, to Plaintiff; and

(10)    Grant Plaintiff such other and further relief as this Court deems just and proper.

Respectfully submitted,

**Lawrence J. Roberts & Associates, P.A.**
Attorneys for Plaintiff
United Van Lines, LLC
249 Catalonia Avenue
Coral Gables, Florida 33134
Phone: (305) 441-7882
Fax: (305) 441-7883

By: _____
     LAWRENCE J. ROBERTS, ESQUIRE
     Florida Bar No.: 343218
     Trial Counsel

F:\Fields\declaratory.complaint.wpd

# EXHIBIT "A"

UNITED VAN LINES, LLC
1 UNITED DRIVE
FENTON, MO 63026
PHONE (636) 326-3100

UNITED
Van Lines

511 00    3

THIS SHIPMENT IS    **NAME SHIPPER OPTION**

SHIPPER   **JESSICA FIELDS**    248-6839697    CONSIGNEE   **JESSICA FIELDS**

COMPANY IS ASSOCIATED WITH    585-2060934

STREET ADDRESS   **4369 ELM GATE**    STREET ADDRESS   **7615 SANDERLING RD.**

ORIGIN   **ORCHARD LK OAKLAND    063 MI**    DEST   **SARASOTA  SARASOTA   038 FL**

EST #    48324    34242

586-206-0934-

6/26    6/27    6/30    6/30

ORIGINAL    REWEIGH

LBS. GROSS
LBS. TARE
LBS. NET
MIN. WT.

155,000

6/27/03

511 CORRIGAN MOVING 8248471400
4000K/SARASOTA MOV941755263
511 CORRIGAN MOVING 8248471400

3/19    39811    NOI    F1

**IMPORTANT - SEE TERMS ON THE REVERSE SIDE**



## CONTRACT   TERMS and CONDITIONS of UNIFORM HOUSEHOLD GOODS   BILL of LADING

### Notice of Availability of Published Tariff

Carrier publishes tariffs which set forth the terms, conditions and prices for the transportation services it provides. The applicable tariff provisions are incorporated herein by reference. Incorporated provisions include, but are not limited to (1) such items, the limitation of carrier's liability, the principal features of which are described in the Valuation Section of this Bill of Lading, (2) Setting the time period for filing claims, the principal features of which are described in Section 6 hereof, and (3) Reserving the carrier's right to assess additional charges for additional services performed and, on non-binding estimates, to base charges on the exact weight of the goods shipment. For more information, please see the terms and conditions published herein and in the carrier's booklet, "Your Rights and Responsibilities When You Move" and "Mover's Standard Brochure". The tariffs are available for inspection at the offices of carrier or, on request, carrier will furnish a copy of the tariff provisions containing carrier's rates, rules or charges governing the shipment and it also available for inspection at the offices of the Household Goods Carriers' Bureau Committee/American Moving and Storage Association 1611 Duke Street, Alexandria, VA 22314.

In effective applicable tariffs, all inventories prepared in conjunction with this Bill of Lading, any applicable National Account Contracts and the Estimate/Order for Service prepared in advance of shipment are hereby incorporated by reference. These documents, and the Bill of Lading constitute the contractual documents governing shipper's move, and include but are not limited to the terms and conditions set forth below. In the event of any conflict between the terms of the Estimate/Order for Service and Bill of Lading, the Bill of Lading shall control. Any specific terms set forth in a National Account Contract Agreement shall supersede any inconsistent terms in the other documents.

This contract is subject to all the rules, regulations, rates and charges in carrier's currently effective applicable tariffs including but not limited to the following terms and conditions.

**SECTION 1:** The carrier or carrier in possession shall be liable for physical loss of or damage to any articles from external cause while being carried or held in storage-in-transit EXCEPT loss, damage or delay caused by or resulting

(a)   From an act, omission or order of shipper.

(b)   From defect or inherent vice of the article, including susceptibility to damage because of atmospheric conditions such as temperature and humidity or changes therein;

(c)   From (1) hostile or warlike action in time of peace or war, including action in hindering, combating or defending against an actual, impending or expected attack (A) by any government or sovereign power, or by any authority maintaining or using military, naval or air forces; or (B) by military, naval or air forces, or (C) by an agent of any such government or power authority or forces; (2) any weapon of war employing atomic fission or radioactive force whether in time of peace or war; (3) insurrection, rebellion, revolution, civil war, usurped power, or action taken by governmental authority in hindering, combating, or defending against such an occurrence; (4) seizure or destruction under quarantine or customs regulations; (5) confiscation by order of any government or public authority; or (6) risks of contraband or illegal transportation or trade.

(d)   From delay caused by strikes, lockouts, labor disturbances, riots, civil commotions, or the acts of any person or persons taking part in any such occurrence or disorder, and from loss or damage when carrier, after notice to shipper or consignee of a potential risk of loss or damage to the shipment, from such causes is restricted by the shipper to proceed with such transportation and/or delivery.

(e)   From Acts of God.

In addition to the foregoing, to the further following limitations on the carrier's or the party's in possession liability

The carrier's or the party's in possession maximum liability shall be either

(1)   The lump sum value declared by shipper which may not be less than $5,000 or $5.00 per pound multiplied by the actual weight of the shipment in pounds, whichever is greater; or

(2)   The actual loss or damage not exceeding sixty (60) cents per pound of the weight of any lost or damaged article when the shipper has released the liability to carrier, in writing, with liability limited to sixty (60) cents per pound per article; or,

(3)   The actual (depreciated) value of the lost or damaged articles if carrier fails to obtain a Shipper's Valuation Declaration and signature on the Customer's Declaration of Value Notice, or the Order for Service OR on the face of this document.

Where a shipper's failure to notify the carrier in writing that an article or articles having a value that exceeds $100 per pound will be included in the shipment will restrict the carrier's maximum liability to $100.00 per pound of any lost or damaged article based on actual weight, not to exceed the declared value of the entire shipment.

Such valuation of extended carrier liability under published tariffs and is not insurance, as that term is used under the McCarran-Ferguson Act, 15 U.S.C. 1011-1015.

**SECTION 2:** The carrier shall not be liable for delay caused by highway obstruction, or faulty or impassable highways, or lack of capacity of any highway, bridge or ferry or caused by breakdown or mechanical defect of vehicles or equipment, or from any cause other than negligence of the carrier; nor shall the carrier be bound to transport by any particular schedule, means, vehicle or otherwise than with reasonable dispatch. Every carrier shall have the right in case of physical necessity to forward said property by any carrier or route between the point of shipment and the point of destination.

**SECTION 3:** Shipper's, consignor's and/or consignee's liability to carrier shall include the following

(a)   The shipper (individual or commercial) and consignor upon tender of the shipment to carrier, and the consignee, upon acceptance of delivery of shipment from carrier, shall be liable, jointly and severally, for all unpaid charges payable on account of a shipment in accordance with applicable tariffs including, but not limited to, sums advanced or disbursed by a carrier on account of such shipment. The extension of credit to either shipper, consignor and/or consignee for such unpaid charges shall not thereby discharge the obligation of the other party to pay such charges or, the event the party to whom credit has been extended shall fail to pay such charges. The joint and several liability of the shipper and consignee as set forth in this Section 3(a) is absolute, and no prior or subsequent course of dealing among the shipper, carrier and/or consignee (including, but not limited to, the course of dealing pertaining to billing and collection of shipping charges) shall be construed as limiting, impairing, waiving or discharging such joint and several liability.

(b)   Shipper and/or consignor represent that no explosives and/or dangerous articles or goods shall be contained in shipment. However, the shipper and/or consignor shall indemnify carrier against any loss or damage caused by the negligent or intentional inclusion in the shipment of explosives or dangerous articles or goods therein.

**SECTION 4:** If for any reason other than the fault of carrier delivery, cannot be made at address shown on the face hereof, or at any changed address of which carrier has been notified, carrier, at its option, may cause articles contained in shipment to be stored in a warehouse selected by it at the point of delivery, or at other available points, at the cost of the owner and subject to a lien on the account, and carrier and other lawful charges.

**SECTION 5:** If shipment is refused by consignee at destination, or if shipper, consignor or owner of property fails to receive or claim it within fifteen (15) days after written notice by United States mail addressed to shipper and consignee at post office addresses shown on face hereof, or if shipper fails or refuses to cure lawfully applicable charges in accordance with carrier's applicable tariff, carrier may sell the property at its option, either (a) upon notice of the manner authorized by law, or (b) at public auction to highest bidder for cash at a public sale to be held at a time and place named by carrier, thirty (30) days notice of which sale shall have been given in writing to shipper and consignee and there shall have been published at least once a week for two consecutive weeks in a newspaper of general circulation at or near the place of sale, a notice thereof containing a description of the property as described in the bill of lading, and the names of the consignor and consignee. The proceeds of any sale shall be applied toward payment of lawful tariff charges applicable to shipment and lawful expenses of notice, advertising and sale, and of storing, caring for and maintaining property prior to sale, and the balance, if any shall be paid to owner of property; PROVIDED that, any perishable articles contained in said shipment may be sold at public or private sale without such notices, if, in the opinion of carrier, such action is necessary to prevent deterioration or further deterioration.

**SECTION 6:** As a condition precedent to recovery, a claim for any loss or damage, injury or delay, must be filed in writing with carrier within nine (9) months after delivery to consignee as shown on face hereof, or, in case of failure to make delivery, then within nine (9) months after a reasonable time for delivery has elapsed; and suit must be instituted against carrier within two (2) years and one (1) day from the date when notice in writing is given to the claimant that carrier has disallowed the claim or any part or parts thereof specified in the notice. Where a claim is not filed or suit is not instituted thereon in accordance with the foregoing provisions, carrier shall not be liable and such a claim will not be paid.

# EXHIBIT "B"

12-30-2009   04:55PM   FROM

# UNITED

## Van Lines ®

Credit Card Authorization Form

AHEW (INS)

HHG Order Number: 511-347-3                           Date: 6/20/3

Shipper's Name: Jessica Fields             Load Date: 6/26/3

Home Phone Number: 248·683·9697    Mr. Cell 586 206·0934
~~Business~~ Phone Number:

Cardholder's Name: Richard A. Fields        Phone Number:

Cardholder's
Billing Address: 4969 Elm gate
Orchard Lake 48324            Expiration Date: 06/05

(Circle Appropriate One)
MasterCard / Visa / Discover or                    - 1953
American Express  Card Number:       -       -

Authorization Number: 055721       Authorization Date: 6/23/3

Agency Contact Person: JTurkas         Agency No.: U571

I authorize United Van Lines to charge the above-referenced credit card account for the transportation and related charges on the household goods move referenced above. I understand that the amount will be charged to my credit card account within approximately 48 hours of the load date. The amount charged is based on a (check one):

X  Price of $ 18,739 99, which is the amount of the binding estimate and based on the services specified. Payment for any services requested and performed which were not included in the estimate will be due when services are performed.

___  Price of $ _____, which is 110% of the estimate, provided by Federal Regulations. The final cost of the move will be based on actual transportation and related services performed. If the actual cost is less than 110% of the estimate, the difference will be credited to the credit card account referenced above. If the actual cost exceeds 110% of the estimate, the difference may be paid at delivery or will be invoiced to the shipper and is due 30 days from delivery.

X _____                      6/23/03
        Cardholder Signature                            Date

Additional Charges Authorized:
     (sign after additional services are authorized or are required to complete delivery)

___  Price of $ _____, which is the amount of additional moving services requested or performed out of necessity in addition to the estimate. By signing below, the cardholder authorizes the costs for additional services to be charged to the above credit card account.

_____          _____
        Cardholder Signature                            Date

Headquarters Use Only:

Processed By: _____    Process Date: _____

Agents Use Only:

For Visa / MasterCard Authorizations, Call:   800-228-1122    Merchant #: 260208622886
For American Express Authorization, Call:     800-528-2121    Merchant #: 324 656 2656
For Discover Authorizations, Call:            800-347-1111    Merchant #: 601101403009275

Be sure that form is complete and fax to 636-349-1611

ADDED
1,309.00

60 AG-02  4-00

White Copy - Authorizing Agent
Yellow Copy - Hauling Agent
Pink Copy - Shipper

# EXHIBIT "C"

UNITED VAN LINE   LLC
22136 NETWORK P  E       *Original Billing*
CHICAGO, IL  60673-1221

**UNITED.**
Van Lines

FED. ID #43-1881477

X611

JESSICA FIELDS
7615 SANDERLING RD
SARASOTA, FL  34242

| FORWARD CORRESPONDENCE TO: | |
|---|---|
| United Van Lines, LLC | C.O.D |
| One United Drive | |
| Fenton, MO 63026-1350 | |
| 636-326-3100 | |

| INVOICE NUMBER | INVOICE DATE |
|---|---|
| 0611 00347 3   -01 | 07/22/03 |

P.O. NO.

| SHIPMENT OF HOUSEHOLD GOODS FOR | FROM | TO |
|---|---|---|
| JESSICA FIELDS | ORCHARD LK     MI | SARASOTA     FL |

Tariff No. **400N 3**          /    35720    Lbs.

TRANSPORTATION AMOUNT REDUCED BY     65.00 XDISC  29380.97
                                           TRANSPORTATION              10283.34

| | | | | |
|---|---|---|---|---|
| 45 | DISH PACKS | @ 82.02 | | 3690.90 |
| 72 | CARTON 1 1/2 CU. FT. | @ 19.63 | | 1413.36 |
| 78 | CARTONS 3 CU. FT. | @ 29.70 | | 2316.60 |
| 46 | CARTONS 4 1/2 CU FT. | @ 36.21 | | 1665.66 |
| 9 | CARTONS 6 CU. FT. | @ 41.42 | | 372.78 |
| 31 | WARDROBE CTN | @ 40.24 | | 1247.44 |
| 1 | TWIN MATTRESS CTN | @ 34.50 | | 34.50 |
| 6 | QUEEN/KING MATTRESS | @ 56.82 | | 340.92 |
| 35 | CORR MIRROR CTN | @ 71.33 | | 2496.55 |
| 1 | CRIB MATTRESS CTN | @ 20.76 | | 20.76 |
| 144 | CUBIC FOOT CRATES | @ 21.12 | | 3041.28 |
| 3 | MINIMUM CRATES | @ 84.48 | | 253.44 |
| | TOTAL PACKING REDUCED | 65.00 XDISC | | 5912.96 |

| | | | | |
|---|---|---|---|---|
| 1 | TWIN MATTRESS CTN | @ 7.63 | | 7.63 |
| 6 | QUEEN/KING MATTRESS | @ 12.77 | | 76.62 |
| | TOTAL UNPACKING REDUCED | 65.00 XDISC | | 29.49 |

| | | | |
|---|---|---|---|
| 1 | ORIG SERV CHRG | 35720 LBS @ 4.46/CWT | 1593.11 |
| 1 | DEST SERV CHRG | 35720 LBS @ 2.31/CWT | 825.13 |
| | DISASSEMBLE CANOPY BED | | |
| 1 | HRS. EXTRA LABOR | 1 MEN @ 63.53/HR | 63.53 |
| 1 | PIANO/ORGAN | @ 154.95/EA | 154.95 |
| 30720 | AUX SERV 0-25 MILES | @ 9.00/EA | 3643.00 |
| | REASSEMBLE CANOPY BED | | |

\* \* \* CONTINUED NEXT PAGE \* \* \*

TOTAL CHARGES

REMIT _____ IF PAYMENT POSTMARKED BY

REMIT _____ IF PAYMENT POSTMARKED AFTER

▼     **TO INSURE PROPER CREDIT, PLEASE RETURN THIS STUB WITH PAYMENT.**     ▼

**UNITED**

| INVOICE NO. | |
|---|---|
| NET DUE | |
| | 1911 |
| | 1911 |
| LATE CHARGE | |
| | 6300-01 |
| TOTAL CHARGES | |

**UNITED.** Van Lines

UNITED VAN LIN LLC
22134 NETWORK CE
CHICAGO, IL 673-1221

FED. ID #43-1881477

0611   JESSICA FIELDS
7415 SANDERLING RD
SARASOTA, FL 34242

FORWARD CORRESPONDENCE TO:
United Van Lines, LLC
One United Drive
Fenton, MO 63026-1350
636-326-3100

C.O.D

| INVOICE NUMBER | INVOICE DATE |
|---|---|
| 0611 00347 3   01 | 07/22/03 |

P.O.NO

| SHIPMENT OF HOUSEHOLD GOODS FOR | FROM | | TO | |
|---|---|---|---|---|
| JESSICA FIELDS | ORCHARD LK | MI | SARASOTA | FL |

| Tariff No. | | | lbs. | |
|---|---|---|---|---|
| | 1 | HRS. EXTRA LABOR | 1 MEN | |
| | | | @ 50.36/HR | 50.36 |
| | | PAPER PAD ANTIQUES AT MINI-STG | | |
| | 4 | HRS. EXTRA LABOR | 1 MEN | |
| | | | @ 50.36/HR | 201.44 |
| 11000 | | MINI STG PICKUP/DEL. | @ 320.00/EA | 320.00 |
| | 1 | EXTRA STOP | @ 103.30/EA | 103.30 |
| | | TOTAL ACCESSORIALS REDUCED | 65.00%DISC | 2404.19 |
| 10283.34 | | FUEL SURCHG-TRANS | @ 3.00% | 308.50 |
| 10283.34 | | INS. RELATED REVENUE | @ 4.00% | 411.33 |
| | | PACKING MATERIAL | | 79.50 |
| | | ADTL PKG MATERIAL | | 43.00 |
| | | SERVICES EXCLUDED FROM DISC | | 842.33 |

| | TOTAL CHARGES |
|---|---|
| | 19494.31 |

| | AMT. PAID | 20049.52 |
|---|---|---|
| REMIT _____ IF PAYMENT POSTMARKED BY | BALANCE | 555.21CR |
| REMIT _____ IF PAYMENT POSTMARKED AFTER | | |

▼ **TO INSURE PROPER CREDIT, PLEASE RETURN THIS STUB WITH PAYMENT.** ▼

INVOICE NO.

0611 00347 3   01 RESD

NET DUE
555.21CR
1911

JESSICA FIELDS
7415 SANDERLING RD
SARASOTA, FL 34242

1911

LATE CHARGE

6300-01

TOTAL CHARGES
555.21CR   MC

# EXHIBIT "D"

**CUSTOMER STATEMENT OF DISPUTED ITEM** *(You must use a separate form for each dispute. Please print.)*

IF YOU BELIEVE A TRANSACTION ON YOUR STATEMENT IS AN ERROR, COMPLETE AND SIGN A COPY OF THIS FORM USING BLUE OR BLACK INK, OR WRITE A DETAILED LETTER ON A SEPARATE SHEET OF PAPER AND THEN RETURN IT TO: (P.O. BOX 15026 WILMINGTON, DE 19850-5026, USA.) PLEASE DO NOT ALTER ANY WORDING ON THIS FORM OR MAIL YOUR LETTER OR FORM WITH YOUR PAYMENT. Provide copies of all documentation that will help us investigate your dispute (airline ticket, rental car, sales slips).

YOUR NAME: _____

ACCOUNT NUMBER: 5329 0315 1519 1963

POSTING DATE: _____   REFERENCE NUMBER: _____

AMOUNT $: _____   MERCHANT NAME: _____

Please fill out below why you think the item noted above is an error. Check only one box.

1. The amount of the charge was increased from $ _____ to $ _____ without my authorization. Enclosed is a copy of the sales slip that shows the correct amount.

2. I certify that the charge listed above was not made by me or a person authorized by me to use my card, nor were the goods or services represented by this transaction received by me or a person authorized by me.

3. I have not received the merchandise that was to be shipped to me on _____ (MM/DD/YY). I have asked the merchant to credit my account.

4. I was charged $ _____ on _____ (MM/DD/YY) but my statement shows a credit slip is enclosed. If the merchant has agreed to provide credit, no account.

5. Merchandise that was shipped to me has arrived damaged and/or defective. I returned it on _____ (MM/DD/YY) and asked the merchant to credit my account. Please describe how the merchandise was damaged and/or defective.

6. Although I did engage in the above transaction, I have contacted the merchant regarding the merchandise or _____ (MM/DD/YY) and requested a credit adjustment, I either did not receive this credit or a credit adjustment, this charge because _____

7. I certify that the charge in question was a single transaction, but was posted twice to my statement. I did not authorize the second transaction.
   - Side #1 $ _____ Reference #
   - Side #2 $ _____ Reference #

8. I received the merchant on _____ (MM/DD/YY) to cancel the preauthorized order (reservation) and if available, enclose a copy of your solutions for showing date and time of cancellation.

9. Although I did engage in the above transaction I have credit. The services to be provided on _____ (MM/DD/YY) were not received _____ (MM/DD/YY)

10. I certify that I do not recognize the transaction. Merchants often provide telephone numbers next to their name on your billing statement. If you do not recognize a transaction please attempt to contact the merchant for transaction information.

11. Other. Please explain.

Signature (required): _____

Home Telephone #: 741 349 7475

Work Telephone #: 586 208 0934

Date: _____

**CUSTOMER STATEMENT OF DISPUTED ITEM** (You must use a separate form for each dispute. Please print)

IF YOU BELIEVE A TRANSACTION ON YOUR STATEMENT IS AN ERROR, COMPLETE AND SIGN A COPY OF THIS FORM USING BLUE OR BLACK INK, OR WRITE A DETAILED LETTER ON A SEPARATE SHEET OF PAPER AND THEN RETURN IT TO [ ] P.O. BOX 15096, WILMINGTON, DE 19850-5096, USA. PLEASE DO NOT ALTER, WORDING ON THIS FORM OR MAIL YOUR LETTER OR FORM WITH YOUR PAYMENT. Provide copies of all documentation (retain the originals) that will help us to investigate you dispute. Please do not send us original documents (retained letters, sales slips).

YOUR NAME: _____

POSTING DATE: 7-04-15 ___

AMOUNT $: 750.11 ___   TRANSACTION DATE: _____

DISPUTED AMOUNT $: 750.11 ___

Please tell us below why you think the item noted above is an error. ( Check only one box. )

- [ ] 1. This amount of the charge was increased from $ _____ to $ _____ or my sales slip was added incorrectly. Enclosed is a copy of the sales slip that shows the correct amount.

- [ ] 2. I certify that the charge listed above was not made by me or a person authorized by me to use my card, nor were the goods or services represented by the transaction received by me or a person authorized by me.

- [ ] 3. I have not _____ _____ (MM/DD/YY) I have asked the merchant to credit my account.

- [ ] 4. I was issued a credit slip that was not shown on my statement. A copy of my credit slip is enclosed. If the merchant has agreed to provide credit, be advised the merchant has up to 30 days to apply this credit to your account.

- [ ] 5. Merchandise that was shipped to me has arrived damaged and/or defective. I returned it on _____ _____ (MM/DD/YY) and asked the merchant to credit my account. Please describe how the merchandise was damaged and/or defective: _____

- [ ] 6. Although I did engage in the above transaction, I have contacted the merchant, returned the merchandise on _____ _____ (MM/DD/YY) and requested a credit adjustment. I either did not receive this credit or it was unsatisfactory. I am disputing the charge because: _____

- [ ] 7. I certify that the charge in question was a single transaction, but was posted twice to my statement. I did not authorize the second transaction.
  Sale #1 $ _____
  Sale #2 $ _____   Reference # _____
  Reference # _____

- [ ] 8. I notified the merchant on _____ _____ (MM/DD/YY) to cancel the preauthorized order (reservation). Please note cancellation # and if available, enclose a copy of your telephone bill showing date and time of cancellation. Reason for cancellation: _____

- [✗] 9. Although I did engage in the above transaction, I have contacted the merchant for credit. The services to be provided on _____ _____ (MM/DD/YY) were not received or were unsatisfactory. Despite the services expected to be received:

- [ ] 10. I certify that I do not recognize the transaction. Merchants often provide telephone numbers next to their name on your billing statement. If you do not recognize a transaction please attempt to contact the merchant for transaction information.

- [ ] 11. Other. Please explain: _____

ACCOUNT NUMBER ___ 5321 2918 1579 1753 ___

REFERENCE NUMBER _____

MERCHANT NAME: ___ U P H O P ___ V A N L I N E S ___

Signature (required): _____   Date: 7/23/03

Home Telephone #: _____   Work Telephone #: _____

GVX 200710 (REV 06/02)   PLEASE KEEP A COPY OF THIS DATA FOR THE STATUS OF YOUR RECORDS

# EXHIBIT "E"



UNITED VAN LINES, LLC
22134 NETWORK PLACE
CHICAGO, IL   60673-1221

**UNITED.** Van Lines

FED. ID #43-1881477

FORWARD CORRESPONDENCE TO
United Van Lines, LLC
One United Drive
Fenton, MO 63026-1350
636-326-3100

0511   JESSICA FIELDS
7415 SANDERLING RD
SARASOTA, FL 34242

C.O.D

| INVOICE NUMBER | | INVOICE DATE |
|---|---|---|
| 0511 00347 3 | 03 | 10/08/03 |

P.O. NO

| SHIPMENT OF HOUSEHOLD GOODS FOR | FROM | TO |
|---|---|---|
| JESSICA FIELDS | ORCHARD LK   MI | SARASOTA   FL |

Tariff No   400N 3   Miles   35720 / 35720   Lbs. At   Per Cwt. $   XXXXX
XXXX   XX
TRANSPORTATION AMOUNT REDUCED BY   65.00 %DISC   29380.97
TRANSPORTATION   10283.34

| | | | | |
|---|---|---|---|---|
| 45 | DISH PACKS | @ | 92.02 | 3490.90 |
| 72 | CARTON 1 1/2 CU. FT. | @ | 19.63 | 1413.36 |
| 78 | CARTONS 3 CU. FT. | @ | 29.70 | 2316.60 |
| 46 | CARTONS 4 1/2 CU FT. | @ | 36.21 | 1665.66 |
| 9 | CARTONS 6 CU. FT. | @ | 41.42 | 372.78 |
| 31 | WARDROBE CTN | @ | 40.24 | 1247.44 |
| 1 | TWIN MATTRESS CTN | @ | 34.50 | 34.50 |
| 6 | QUEEN/KING MATTRESS | @ | 56.82 | 340.92 |
| 35 | CORR MIRROR CTN | @ | 71.33 | 2496.55 |
| 1 | CRIB MATTRESS CTN | @ | 20.76 | 20.76 |
| 46 | CUBIC FOOT CRATES | @ | 21.12 | 971.52 |
| 1 | MINIMUM CRATES | @ | 84.48 | 84.48 |
| | TOTAL PACKING REDUCED | 65.00%DISC | | 5129.41 |

| | | | | |
|---|---|---|---|---|
| 1 | TWIN MATTRESS CTN | @ | 7.63 | 7.63 |
| 6 | QUEEN/KING MATTRESS | @ | 12.77 | 76.62 |
| | TOTAL UNPACKING REDUCED | 65.00%DISC | | 29.49 |

| | | | | |
|---|---|---|---|---|
| 1 | ORIG SERV CHRG | 35720 LBS @ 4.46/CWT | | 1593.11 |
| 1 | DEST SERV CHRG | 35720 LBS @ 2.31/CWT | | 825.13 |
| | DISASSEMBLE CANOPY BED | | | |
| 1 | HRS. EXTRA LABOR | 1 MEN @ 63.53/HR | | 63.53 |
| 1 | PIANO/ORGAN | @ 154.95/EA | | 154.95 |
| 24720 | AUX SERV  0-25 MILES | @ 9.00/EA | | 3023.00 |
| | REASSEMBLE CANOPY BED | | | |

* * * CONTINUED NEXT PAGE * * *

| | TOTAL CHARGES |
|---|---|

REMIT _____ IF PAYMENT POSTMARKED BY

REMIT _____ IF PAYMENT POSTMARKED AFTER

▼   TO INSURE PROPER CREDIT, PLEASE RETURN THIS STUB WITH PAYMENT.   ▼

| | |
|---|---|
| | INVOICE NO. |
| | NET DUE |
| | 1911 |
| | 1911 |
| | LATE CHARGE |
| | 6300.01 |
| | TOTAL CHARGES |



**UNITED.** Van Lines

UNITED VAN LINES, LLC
22136 NETWORK PLACE
CHICAGO, IL   60673-1221

FED. ID #43-1881477

FORWARD CORRESPONDENCE TO:
United Van Lines, LLC
One United Drive
Fenton, MO 63026-1350
636-326-3100

C.O.D

0511   JESSICA FIELDS
7615 SANDERLING RD
SARASOTA, FL  34242

| INVOICE NUMBER | INVOICE DATE |
|---|---|
| 0511 00347 3   03 | 10/08/03 |

PO NO

| SHIPMENT OF HOUSEHOLD GOODS FOR | FROM | TO |
|---|---|---|
| JESSICA FIELDS | ORCHARD LK   MI | SARASOTA   FL |

| Tariff No | | Miles | Lbs. At | Per Cwt. $ | |
|---|---|---|---|---|---|
| | 1 | HRS. EXTRA LABOR | XXXX 1 MEN | XX | XXXXX |
| | | | @ 50.34/HR | 50.34 | |
| 11000 | | MINI STG PICKUP/DEL. | @ 320.00/EA | 320.00 | |
| | 1 | EXTRA STOP | @ 103.30/EA | 103.30 | |
| | | TOTAL ACCESSORIALS REDUCED | 65.00%DISC | | 2146.68 |
| 10283.34 | | FUEL SURCHG-TRANS | @ 3.00% | 308.50 | |
| 10283.34 | | INS. RELATED REVENUE | @ 4.00% | 411.33 | |
| | | PACKING MATERIAL | | 79.50 | |
| | | ADTL PKG MATERIAL | | 63.00 | |
| | | FULL VALUE | | 919.00 | |
| | | SERVICES EXCLUDED FROM DISC | | | 1781.33 |

| | TOTAL CHARGES |
|---|---|
| | 19370.25 |

REMIT _____ IF PAYMENT POSTMARKED BY     AMT. PAID  20413.31

REMIT _____ IF PAYMENT POSTMARKED AFTER     BALANCE  1043.06CR

▼          TO INSURE PROPER CREDIT, PLEASE RETURN THIS STUB WITH PAYMENT.          ▼

R
E
T     RETURN
U
R
N

| INVOICE NO. |
|---|
| 0511 00347 3   03 RESD |

| NET DUE | |
|---|---|
| 1043.06CR | 1911 |

| | 1911 |
|---|---|
| LATE CHARGE | |

JESSICA FIELDS
7615 SANDERLING RD
SARASOTA, FL  34242

| | 6300-01 |
|---|---|
| TOTAL CHARGES | |
| 1043.06CR | |

# EXHIBIT "F"

# ICA 3 MASTERCARD CHARGEBACK FORM

Alternate Account #.    5329031515191847

Document Date    12/12/2003

Name.    RICHARD A FIELDS

COMMERCE BANK, N.A.
FDMS
PO BOX 6014
ATTN CHARGEBACK CONTACT
HAGERSTOWN MD 21741 6014

[ ] Priority Print
[✓] Keyed
[ ] Manual
[ ] Incomplete
[ ] Combined
[ ] Missing Documentation

ACQUIRING ICA    6741

ISSUING ICA:    1017

CARDHOLDER ACCOUNT NUMBER:    5329031515191953

AMOUNT:    18,739.99

MICROFILM REFERENCE NUMBER    78457373174285000174228

ACCOUNT STATUS:

TRANSACTION DATE.    06/23/2003

PROCESSING DATE    174

USAGE CODE: 450   TRANSACTION TYPE: 41    CAT Ind·

RECORD TYPE:

MERCHANT NAME    UNITED VAN LINES

MCC CODE    4214

CHARGEBACK REFERENCE NUMBER:

ORIG. AMT:

REASON CODE    4853    DOC INDICATOR: 1    CYCLE. 5

INDICATOR    CURRENCY CODE:

CURRENCY EXPONENT

DRAFT DATE    00/00/0000   DRAFT NO.:    TRANSMITTAL AMOUNT:

MERCHANT CITY.    FENTON    MERCHANT STATE.    MO    COUNTRY CODE    US

ACQUIRER COMMENT

BANKNET REF.    BANKNET DATE:    AUTH CODE:    MERCH ID.

MEMBER MESSAGE BLOCK·

PREPARED BY:    Cheryl Dillon    DATE:    12/12/2003

# ICA 3 MASTERCARD CHARGEBACK FORM

Alternate Account #.   5329031515191647

Document Date   12/24/2003

Name:   RICHARD A FIELDS

COMMERCE BANK, N A
FDMS
PO BOX 6014
ATTN. CHARGEBACK CONTACT
HAGERSTOWN MD 21741 6014

[ ] Priority Print
[✓] Keyed
[ ] Manual
[ ] Incomplete
[ ] Combined
[ ] Missing Documentation

ACQUIRING ICA   6741

ISSUING ICA:   1017

CARDHOLDER ACCOUNT NUMBER:   5329031515191953

AMOUNT:   266 47

MICROFILM REFERENCE NUMBER:   7845737318228:000203689

ACCOUNT STATUS:

TRANSACTION DATE:   07/01/2003

PROCESSING DATE:   182

USAGE CODE: 453   TRANSACTION TYPE: 41   CAT Ind:

RECORD TYPE:

MERCHANT NAME:   UNITED VAN LINES

MCC CODE:   4214

CHARGEBACK REFERENCE NUMBER:

ORIG AMT:   1,309.53

REASON CODE:   4853   DOC INDICATOR: 1   CYCLE: 5

INDICATOR   CURRENCY CODE:   CURRENCY EXPONENT:

DRAFT DATE:   00/00/0000   DRAFT NO.:   TRANSMITTAL AMOUNT:

MERCHANT CITY   FENTON   MERCHANT STATE:   MO   COUNTRY CODE   US

ACQUIRER COMMENT:

BANKNET REF:   BANKNET DATE:   AUTH CODE:   MERCH ID.

MEMBER MESSAGE BLOCK:

PREPARED BY:   Cheryl Dillon

DATE:   12/24/2003

# EXHIBIT "G"



March 23, 2004

Dr. and Mrs. Richard Fields
7615 Sanderling Rd.
Sarasota, FL 34242

**Re:   United Van Lines, LLC Order No.: 511-347-3**

Dear Dr. & Mrs. Fields:

This letter is written in follow up to the afternoon conference call we had last Friday, March 19, 2004 with yourself, Tim Baer, Jay Vandroff of Yarnall Warehouse, Inc. ("Yarnall") and myself concerning your interstate move from Michigan to Florida under the above-referenced United Van Lines, LLC ("United") order number and some of your items which are still in two self-storage facilities in the Sarasota area. After our discussion, it became apparent that it would be appropriate to take this opportunity to confirm in writing United's position with regard to the various issues discussed in our conference call of March 19, 2004 and throughout your dealings with United. To assist in this endeavor, a review of the facts leading up to Friday's conference call and the law applicable to your interstate shipment is appropriate.

## FACTUAL SUMMARY

In June 2003, you contracted with United through its disclosed household goods agent in Michigan, Corrigan Moving Systems ("Corrigan"), to move your household goods from Michigan to Florida. An Estimate/Order for Service was prepared by Corrigan in March 2003 detailing the services to be provided by United and other third parties. You were given a non-binding estimate for packing, loading, hauling, delivery and unpacking of your household goods in the amount of $18,739.99. You signed United's credit card authorization form on June 27, 2003 in the same amount authorizing United to invoice your credit card for these interstate transportation services.

Your interstate shipment was delivered to Florida in late June and early July 2003 in two stages. The main portion of your shipment delivered on June 30, 2003. The overflow portion of your shipment delivered on July 7, 2003. The main portion, consisting of approximately 26,000 pounds, delivered to your temporary rental property on Sanderling Road. The overflow portion consisting of just over 9,300 pounds delivered into two separate self-storage units in the Sarasota area. At the time of delivery, additional services were performed including unpacking of cartons, delivery into self-storage, reassembly of a bed and the use of a shuttle which resulted in total transportation charges of $19,494.31.

Based upon an audit of the applicable charges for your move, United issued you a credit in the amount of $555.21 on July 25, 2003. In addition, due to a dispute with Corrigan over crating and shuttle services at destination, an additional $1,043.56 was credited to your credit card account in late September/early October 2003. The amount due to United for your

move after these adjustments totals $18,739.99. You have again disputed these charges through your credit card company as more specifically outlined below.

Even after the adjustments referenced above, you submitted a charge card dispute with your credit card company. United received notice of your dispute in December 2003. The reasons you itemize as a basis for your request for a refund include what you characterize as an insufficient crew, alleged misdelivery of items, failure to return phone calls, and alleged damage to your household goods including your assertion that your household goods were left on United's trailer for 24 hours in the Florida heat and sun prior to their delivery.

I was asked to review your credit card dispute and prepare a response on behalf of United. I did so on January 22, 2004. In my January 22, 2004 letter I noted that no record of any claim for loss or damage had been submitted by you to United, and I provided a claim form for you to complete and timely file a proper written claim for alleged loss or damage with United. Following this letter, you and I began discussing your move in a series of phone calls. My records reflect our first discussion regarding your move occurred on February 13, 2004.

In our February 13, 2004 conversation, you mentioned several concerns as outlined above. You also raised the issue of your pending dispute with your credit card company and the possibility of paying your outstanding charges. You indicated that you were concerned that your antique furniture may have suffered heat related damage from sitting in United's trailer at destination for about 24 hours before unloading. You explained that you had not been able to inspect your household goods as they were unloaded into two self-storage units in Sarasota. You explained that you had been unable to access the goods. I explained to you the necessity of timely filing a written claim for any alleged cargo loss or damage within nine months from the date of the delivery of your shipment to your rental residence and self-storage facilities.

I told you that the claim-filing deadline for the main portion of your shipment would expire on March 30, 2004. I also explained to you that the claim-filing deadline for the overflow portion of your shipment would expire on April 7, 2004. You asked me if United would agree to extend the nine-month claim-filing deadline until September 2004, when your permanent residence is scheduled to be completed, in order to avoid unpacking and repacking your items which are in self-storage. I explained that United could **not** agree to extend the nine-month claim filing deadline as such would violate federal law and United's tariffs which govern your interstate move.

## YOUR PHONE CONVERSATIONS WITH MR. BAER

On February 23 and 25, 2004 you discussed your concerns with Mr. Timothy M. Baer, Corporate Legal Counsel in United's Law Department. In your conversations with Mr. Baer, you reiterated that you were concerned that your household goods in storage had sustained damage that you could not ascertain because some of your shipment was unloaded into two separate self-storage facilities. You also told Mr. Baer that you were still disputing your transportation charges with your credit card company. Mr. Baer told you that if a claim was not timely filed within nine months from the date of delivery, your claim would be denied as time-barred. Mr. Baer also told you that according to the terms and conditions of United's Bill of Lading and tariffs under which your shipment was transported, any damage from heat or changes in climatic conditions are excluded from carrier liability.

*Dr. & Mrs. Fields*
*March 23, 2004*
*Page 3*

Mr. Baer spoke with you on February 23, 2004 and again on February 25, 2004. In the February 23 conversation, you explained to Mr. Baer that you had moved under United Order No. 511-347-3 from Michigan to Florida in July 2003. You indicated that you had a dispute with Corrigan. You indicated to Mr. Baer that you believe your antique furniture delivered to the two self-storage facilities incurred damages, but that you were unable to ascertain the extent of the damages because the items were packed so tightly into the storage facilities. You also told Mr. Baer that you had not yet paid United for the move because you had disputed United's interstate transportation charges with your credit card company. You told Mr. Baer that you had called Corrigan on repeated occasions and could not get any return phone calls, and you also complained to Mr. Baer that I had failed to return your phone calls.

Mr. Baer explained to you that a timely filed written claim must be submitted to United within nine months from the date of delivery of your shipment. Mr. Baer explained to you that if the main portion of your shipment delivered on June 30, 2003, you would be obligated to timely file a written claim with United on or before March 30, 2004 as it related to the items that were delivered on June 30, 2003. Further, Mr. Baer explained to you that a timely filed claim must be submitted on or before April 7, 2004 for any of the items which were delivered with the overflow portion of your shipment on July 7, 2003.

In your conversation with Mr. Baer, you reiterated your complaint that the van operator left your furniture items in the moving van for 24 hours and that you believed that this caused heat related warping or other atmospheric damages to what you described as your antique furniture. At that point, Mr. Baer explained to you that there is a provision on the back of United's Bill of Lading which specifically excludes from carrier liability any damage to household goods caused by changes in atmospheric conditions. You again reiterated that you felt it was United's responsibility to facilitate opening up the two self-storage facilities and allowing you to inspect the furniture and ascertain if there was, in fact, any loss or damage.

When questioned by Mr. Baer about how this could possibly be United's responsibility, you indicated that it was your belief that United was responsible because several items were reportedly misdelivered to your rental property which should have gone to storage and several items which were delivered to storage should have been delivered to your rental property. Mr. Baer told you that he did not agree with your reasoning as to why you believe United was responsible.

At that point in the conversation, you asked Mr. Baer to investigate this matter and find out how much it would cost to have United's local household goods agent (Yarnall) assist you in unloading the two self-storage facilities and allowing you to inspect the furniture so that you could ascertain what extent, if any, of damage had been incurred to your household goods in storage. It is important to note that at no time in your conversations with Mr. Baer on February 23, 2004 or February 25, 2004 did you mention that any of the items in the self-storage facilities were in crates. At no time in your conversations with Mr. Baer did you mention that you would expect all furniture items to be uncrated, reassembled, then disassembled and then recrated at United's expense. To the contrary, you asked Mr. Baer to get you pricing information so that you could determine whether or not you would be willing to pay Yarnall to assist you in accessing your shipment so that you could timely file a written claim with United within nine months from the date that United delivered your shipment.

*Dr. & Mrs. Fields*
*March 23, 2004*
*Page 4*

## MY EFFORTS TO FACILITATE AN INSPECTION

Subsequent to your conversations with Mr. Baer, I had several discussions with you about the possibility of having your items in self-storage inspected and the items you reported as mis-delivered redelivered to your rental property before your nine-month claim filing period expired. During the last few weeks, you have repeatedly brought up a proposal for United to extend the nine-month claim-filing period. You even indicated that a federal judge friend of yours (whom you could not name) said it would be okay to extend the nine-month deadline if both parties agreed to do so. Each time you have proposed an extension of the nine-month claim-filing deadline, I explained that under applicable federal law, the nine-month claim filing deadline cannot be extended. Each time you brought the issue up, I clearly told you that if a claim was not filed within nine months of delivery, any claim you filed would be denied as time-barred.

You and I have also discussed the economics of physically inspecting your goods in the self-storage facilities. While you were initially agreeable to paying the costs that would be incurred, you have since indicated that you will not pay twice for these services and will not contribute to the costs of removing your items from the self-storage facilities for inspection. It is true that I told you Corrigan was willing to pay "reasonable costs" associated with inspecting the items in storage. However, the issue then arose for the first time as to who would pay for access to packed and crated items. You alleged that all crates would have to be opened; furniture items assembled; boxes opened if some furniture parts were packed; then all items would have to be disassembled and then re-crated. I told you that other than opening crates for you to inspect, any costs to physically look into the crates, assemble, disassemble and re-crate items would be your responsibility.

## THE MARCH 19, 2004 CONFERENCE CALL

In our March 19, 2004 conference call, we discussed at length the issue of un-crating, reassembling, disassembling and re-crating the furniture items which you speculate are damaged. In the March 19, 2004 phone call, you stated that the big furniture items were still in the original crates and that you believe that the items in the crates were damaged by warping from being on the moving van for 24 hours in 101 degree heat. In our March 19, 2004 conference call you indicated that you expected United to pay to have all furniture items uncrated, assembled, disassembled and then re-crated so you could determine if any damage really existed. You even said some boxes might have to be opened if parts to any of the furniture items might be packed. You said that you expect United to absorb all of these costs and you flatly refused to participate financially with the expenses that will be incurred to facilitate the inspection of the goods. When Mr. Baer asked if you would consider splitting the costs three ways with Untied, Corrigan and yourself, you refused.

You have been contacted twice in the last two weeks by Jay Vandroff of Yarnall to try to make arrangements to have the items inspected. Mr. Vandroff reports that on each occasion you have attempted to change or add services which were not discussed (such as unpacking boxes). In fact, during our conference call on March 19, you indicated for the first time that you have damaged items at your rental property which will require yet another trip and more expense to inspect. In sum, your constant attempts to change the terms and conditions of

*Dr. & Mrs. Fields*
*March 23, 2004*
*Page 5*

what you expect to be done have made it impossible for United to assist you in facilitating a physical inspection of the items in the self-storage facilities. It is United's belief that you are constantly changing and adding to the issues to be addressed in an attempt to persuade United to agree to extend the nine-month claim filing period. United will not do so.

## APPLICABLE LAW

To assist you in understanding United's position, a review of the relevant law is appropriate. The liability of an interstate motor carrier (United) for loss or damage to household goods is exclusively governed by federal law 49 U.S.C. § 14706 (formerly § 11707). Specifically, the Carmack Amendment ("Carmack") to the Interstate Commerce Act ("ICA") exclusively governs an interstate carrier's liability for loss, damage, or delay to goods moving in interstate commerce. The remedies available under Carmack preempt any and all state or common law remedies for recovery of loss or damage to an interstate shipment. Adams Express Co. v. Croninger, 226 U.S. 491, 505 (1913); Underwriters at Lloyds of London v. North American Van Lines, 890 F.2d 1112, 1129 (10th Cir. 1989) (citing all 11 U.S. Circuits holding that state and common law actions are preempted by 49 U.S.C. § 11707). See also Hughes v. United Van Lines, Inc., 829 F.2d 1407 (7th Cir. 1987).

Since your shipment was transported in interstate commerce from Michigan to Florida, United's liability, if any, and the measure of your damages are determined exclusively under federal law and federal judicial decisions. Missouri Pacific Railroad Co. v. H. Rouw Co., 258 F.2d 445 (5th Cir. 1958). Federal courts that have addressed the broad preemptive scope of Carmack have uniformly rejected attempts to apply state or common law, or even federal common law, causes of action against an interstate motor carrier arising out of claims for loss or damage to household goods shipped in interstate commerce. See Margetson v. United Van Lines, Inc., 785 F.Supp. 917 (D. N.M. 1991); Moffit v. Bekins Van Lines Co., 6 F.3d 305 (5th Cir. 1993) and Cleveland v. Beltman NorthAmerican Co. Inc., 30 F.3d 373 (2nd Cir. 1994); Pietro Culotta Grapes v. Southern Pac. Transport, 917 F.Supp. 713 (E.D. Cal. 1996).

## CARMACK REQUIRES A PROPER WRITTEN CLAIM BE FILED
## WITHIN NINE (9) MONTHS FROM THE DATE OF DELIVERY

Carmack, applicable federal regulations, United's interstate Bill of Lading issued to you and United's operating tariffs incorporated by reference into the Bill of Lading all require that a claim for loss, damage or delay be timely filed in writing and received by United within nine (9) months from *the date that the shipment was delivered.* See, 49 U.S.C. § 14706(e). Timely filing of a proper written claim is a condition precedent to recovery upon such claims.

## DATE OF DELIVERY

There is no dispute that United delivered the main portion of your household goods shipment to your rental property on June 30, 2003 and the overflow to two separate self-storage facilities on July 7, 2003. Accordingly, the nine (9) month claim filing periods expire on March 30, 2004 and April 7, 2004, respectively.

## NINE-MONTH CLAIM FILING PERIOD

Courts that have considered nine-month issues have used the actual date of delivery to calculate the beginning of the nine-month claim filing period. See, Pathways Bellows, Inc. v. Blanchette, 630 F.2d 900 (2d Cir. 1980) cert. denied, 450 U.S. 915 (1981) ("The shipment arrived at its destination on October 22, 1974, ... the 9 month period began on October 22, 1974, and expired on July 22, 1975").

In addition, courts have found that the claim filing period is calculated by the calendar month, and not by any overly complicated measure of number of days.  See the Pathway Bellows example, cited above.  In Pathway Bellows, the date of delivery was October 22, 1974.  Therefore, the Court calculated that the nine-month claim filing requirement ended on July 22, 1975 – exactly nine calendar months later.

## YOUR CLAIM AND THE NINE-MONTH CLAIM FILING DEADLINE

Your interstate shipment was delivered by United on **June 30, 2003**, and **July 7, 2003**. The nine-month claim filing deadline expires on **March 30, 2004** and **April 7, 2004** respectively.  In Pathways Bellows, the Second Circuit Court of Appeals held that the plaintiff's claim was untimely when it was received **just one day** beyond the nine month claim filing period, even though the carrier had actual knowledge of the damage and had issued an inspection report on the damaged goods.

Any argument that you may attempt to assert that you were not aware of the nine-month claim filing requirement has no merit.  Under applicable federal law, you are charged with notice of United's published tariffs.  Federal courts have repeatedly found that a shipper is presumed to have constructive knowledge of the entire contents of the carrier's tariffs, including the nine-month claim filing requirement. See White v. United Van Lines, Inc., 758 F.Supp. 1240 (N.D.Ill. 1991) and Aero Trucking Inc. v. Regal Tube Company, 594 F.2d 619, 621 (7th Cir. 1979).  Further, the interstate Bill of Lading you signed clearly indicates that a claim must be filed in writing within nine (9) months as a condition precedent to any recovery from the carrier.  "Filed" means received by the carrier – **not** dropped in the mail.  In addition, both Mr. Baer and I have repeatedly explained to you that a proper written claim must be timely filed within nine months from the date of delivery of your shipment or else your claim would be time-barred.

## CONCLUSION AND OFFER OF COMPROMISE

United completed delivery of your shipment when it delivered the household goods to your rental property and to the self-storage facilities.  Despite the fact that many of the furniture items may still be in crates, you are nevertheless required by law to timely file a written claim for any cargo loss or damage with United within nine months.  I am enclosing several additional claim forms with this letter for your use.

As you know, we have been unable to reach any consensus as to the nature and extent of United's participation in assisting you to access the items still in the two self-storage facilities.  Solely as a customer service gesture and without admitting any liability, United is willing to reimburse you up to $3,000 towards the costs and expenses that you may incur

*Dr. & Mrs. Fields*
*March 23, 2004*
*Page 7*

related to removing furniture items from the two self-storage facilities, reassembling them, inspecting them, disassembling them, and then re-crating them. If you send me itemized bills and evidence of payment detailing the exact nature of the services provided, United will reimburse you for any such expenditure up to a total of $3,000.

There is no doubt that you are legally required to timely file a proper written claim within nine months from the date of delivery of your shipment. Despite our best efforts to assist you in accessing and inspecting your household goods in the two self-storage facilities, we have been unable to reach any agreement as to the physical or financial extent of United's participation. Thus, United assumes that you will make your own arrangements.

Without admission of any liability, United will agree to contribute up to $3,000 towards the expenses you may incur to inspect the household goods and timely file a proper written claim with United. **It must be clearly understood that United's proposed $3,000 contribution cannot and will not affect your responsibility to comply with the claim filing requirements described above, all of which remain in full force and effect.**

Sincerely,

Eric K. Eickmeyer
Staff Attorney

Encl.
#35251

# EXHIBIT "H"

Richard A. Fields, M.D., P.C.
Obstetrics - Gynecology - Infertility - Laser Surgery

55 North Pond Drive, Suite 2
Walled Lake, MI 48390-0838

3/29/04

(248) 624-3366
Fax: (248) 624-0127

Mr. Enckamyn

Per our conversation today
please advise if anything else is
needed & confirm. That this letter
as well as the forms complies c̄ the
process required to initiate our
claim & put United (company) on proper
notice

*(signature)*

PS I am in receipt of United's
Bill of Lading. <u>All</u> items not in
our rental are part of our claim

*(signature)*

Richard A. Fields, M.D., P.C.
Obstetrics - Gynecology - Infertility - Laser Surgery

55 North Pond Drive, Suite 2
Walled Lake, MI 48390-0838

(248) 624-3366
Fax: (248) 624-0127

It is our Position.2 that this Claim is for the items listed on the Claim forms plus the list on legal pad Paper. Further all items on the

inventory sheets from United except those at our rental home are to be claimed as missing and/or damaged until a proper inspection can be Done.

The delay to this process is due to the misleading insurance plan offered to us by Corrigan that would have allowed us to wait until 9/04 when we move.

Therefore consider this letter to represent a claim for missing and/or damage to all items in Storage

Richard Fields

Richard A. Fields, M.D., P.C.
Obstetrics - Gynecology - Infertility - Laser Surgery

55 North Pond Drive, Suite 2
Walled Lake, MI 48390-0838

(248) 624-3366
Fax: (248) 624-0127

Please remember I was given extended insurance when our problems arose while the items were stored. I understand you feel this was in error, however they did extend this to us.

*See attached

On the claim forms we have listed some, but not all problems that may exist.

Corrigan (limited) negligence makes it impossible to finalize our damages.

The entire inventory sheets burmsheel to us represents one claim. Item by item accounting is impossible at this time therefore all stored items are claimed as damaged, missing or both.

## Evidence of Increased Carrier or Warehouseman Obligation

**Name of Carrier** [BUDGET SELF STG/SAWYER STORAGE]    No. __10376__
**or Warehouseman** [c/o CORRIGAN MOVING SYSTEMS ]
**Address** [23923 RESEARCH DRIVE ]
[FARMINGTON HILLS, MI  48335-2630]

**Owner of Property** __JESSICA FIELDS__

**Mailing Address** __7615 SANDERLING RD, SARASOTA, FL  34242__

**Obligation Assumed:**

Property: ☐ In Transit    ☒ In Storage
Valuation: ☐ Actual Cash Value    ☒ Replacement Cost

**Bill of Lading or Warehouse Receipt Number** __511-347-3 / UNIT 1 AND UNIT 9__

**Declared Value $__175,000__** (This amount is the owner's written declaration of value)
**Carrier's/Warehouseman's Maximum Limit of Liability is
the Declared Value Shown Above**

**Owner's Retained Liability:** Each claim for loss or damage shall be adjusted separately and from each adjusted claim the amount of $__500.00__ shall be deducted. (Absence of entry means no owner retention.)

**Signature of Carrier's/Warehouseman's
Authorized Representative** _Michele Steiner_    **Date** __01 JULY 2003__
    MICHELE STEINER

**Signature of Owner of
Property**    **Date** 01 JULY 2003

## THIS IS NOT INSURANCE

In consideration of the charge stated on the warehouse receipt or bill of lading shown above, the carrier/warehouseman agrees with the owner to assume the obligation for damage to or destruction of the property covered subject to the following provisions, stipulations and limitations:

1. **OBLIGATION ASSUMED.** The carrier/warehouseman assumes obligation against all risk of direct physical loss or damage to the property from any external cause except as hereinafter excluded.

2. **PROPERTY COVERED BY OBLIGATION.** This obligation covers household goods defined as: personal effects and personal property used or to be used in a dwelling when a part of the equipment or supply of such dwelling; furniture, fixtures, equipment and the property of stores, offices, museums, institutions, hospitals or other establishments; and articles including object of art, displays and exhibits, which, because of their unusual nature or value, require specialized handling and equipment usually employed in moving household goods, the customer accepted by the carrier/warehouseman for transportation, repositioning, packing or storage, or declared in a bill of lading or warehouse receipt except as hereinafter excluded.

3. **ENTIRE CONTRACT.** This evidence represents the entire contract and is not subject to alteration or modification.

4. **TERRITORIAL LIMIT.** This evidence covers only loss or damage occurring within the forty-eight contiguous states of the United States, the District of Columbia, Canada, or within the states of Alaska or Hawaii.

5. **EXCLUSIONS & LIMITATIONS.** No obligation is assumed for:
   A. Delay of shipment, loss of market or loss of use.
   B. The condition or flavor of perishable articles.
   C. Manuscripts, mechanical drawings, blueprints, documents, records, other valuable papers, computer disks or tapes, computer generated data, currency, money.
   D. Jewelry, watches, bullion, precious stones, pearls, furs or garments trimmed with fur or articles of extraordinary value which are not specifically listed on the bill of lading or warehouse receipt by description and value.
   E. Breakage of china, glassware, bric-a-brac, or similar articles of a brittle or fragile nature unless professionally packed or unless such breakage results from negligence of the carrier or is caused directly by fire, lightning, explosion, flood, cyclone, tornado, windstorm, collapse of bridges, theft, or collision, overturn or upset of the transporting vehicle.
   F. Loss or damage caused by or resulting from:
      (1) An act, omission or order of owner or his agent;
      (2) Insects, moths, vermin or ordinary wear and tear;
      (3) Defect or inherent vice of the article;
      (4) Sale or auction of goods pursuant to state or federal law;
      (5) Dampness of atmosphere or extreme of temperature, mold and mildew;
      (6) Mechanical or electrical breakdown or derangement of...

Master Bed room

1. European ARMOIR - 3 BEVELED GLASS MIRRORED DOORS    100 YRS NEW YORK CITY

2. WALNUT CIRCULAR PAWFOOTED ENTRANCE TABLE   ANTIQUE

3. CURIO CABINET - 3 BOWED glass panels MIRROR BACK   ANTIQUE

4 REMBRANT ETCHING - SELF PORTRAIT

5. ANTIQUE WOOD HOLDER - BRASS - PAW FEET LEFT IN MICHIGAN BY MOVERS

6. CARVED ANTIQUE CLAW FOOTED BED CHEST — CARVING KNOCKED off and NOT SAVED AS REQUESTED by JESSICA FIELDS BEFORE ANY/All ITEMS WERE MOVED TO THE TRUCK. AN

7. TWO BRONZE ANGEL SCONCES GLASS globes - ANTIQUE

# GREAT ROOM

1. ORIGINAL Oil PAINTING THE SHIP
   100+ YEARS

2. ORIGINAL PAINTING ON Silk - ASIAN
   ANTIQUE

3. 75 PIECE LALIQUE CRYSTAl COLLECTION

4. 25 PIECE WATERFORD CRYSTAl COLLECTION

5. 10 PIECE DAUM GLASS COLLECTION

6. ANTIQUE STEM WARE CRYSTAl COLLECTION

7. ITALIAN CARVED GRIFFIN DESK, A
   PIECE OF CROSS BAR IS NOW MISSING
   CALLED AND implORED FOR A TRUCK
   CHECK FOR All MISSING CARVING —
   JOB SUPERVISOR NEVER RETURNED
   MY FRANTIC CALL. I THEN CALLED
   MICHIGAN SUPERVISOR

8. WEDDING ARMOUR - HEAVILY CARVED ANTIQUE - PURCHASED IN NEW YORK CITY

9. ANTIQUE HANGING LAMP - FIGURAL ORNATE PURCHASED IN CHICAGO

10. ORIENTAL CARPET - HAGOPIAN

11. ORIENT/ASIAN ANTIQUE PORCELIAN COLLECTION

12. PAIR OF ANTIQUE CANDELABRA - BRONZE

13. ANTIQUE WALNUT CARVED PAW love SEAT

# DEN

1. THREE DOOR ANTIQUE BURL WOOD ARMOIR LARGE PIECE

2. LARGE TABRIZE RUG from IRAN

3. ANTIQUE LION HEAD AND PAW CIRCULAR OAK PEDASTAL TABLE

4. LARGE ORNATE CARVED WOODEN BEVELED EDGE CHERUB MIRROR

# ENTRY HALL

1. BLACK BABY GRAND PIANO

2. ANTIQUE HEAVILY CARVED WALL CABINET — WALNUT DRAGONS

3. ANTIQUE ASIAN SILK PAINTING FRAMED

4. ANTIQUE CEILING FLUSH ANGEL LAMP — PURCHASED IN CHICAGO

5. TWO IDENTICAL ANTIQUE BEVELED MIRROR DOOR ARMOIRS PURCHASED IN SAN FRANCISCO

6. GREEN CHINESE ORIENTAL RUG

# GUEST BEDROOM

1. ONE ORNATELY CARVED Ralph LAUREN QUEEN SIZE FOUR POSTER BED — Complete

2. Original OIL — "IRIS"

# MASTER BATH

1. THREE MIRROR MARBLE TOP CABINET ANTIQUE - SAN FRANCISCO

2. CARVED WOODEN HORSE

3. HUNTING SCENE TABRIZE Wool RUG

# Sasha's Bedroom

1. ONE FOUR POSTER ORNATE QUEEN SIZE HENREDON WOODEN BED — *THE MOVERS BROKE ONE OF THE FOUR POSTERS!

2. Peter Max Angel 10,100

3. Animal Kingdom

# Kitchen

1. Oak Ornate Long 2 Story Antique
   * Cabinet — Damaged

2. Oak Kitchen Plate 2 Story Cabinet
   Antique

SHIPPER INVENTORY                          03/26/03   Ref: *GL3473*  1

| | | |
|---|---|---|
| *Shipper* | JESSICA FIELDS<br>4969 ELM GATE<br>ORCHARD LAKE, MI 48324 | *Consignee* SAME<br><br>SIESTE KEY, FL 34234 |
| *Orig Agent* | CORRIGAN MOVING SYSTEMS<br>23923 RESEARCH DRIVE<br>FARMINGTON HILLS, MICHIGAN<br>48335<br>800/446/1996 | *Carrier* UNITED VAN LINES, LLC.<br>1 United Drive<br>Fenton, MO 63026<br>(636) 326-3100<br>NC-67234 |

Pack Date                          *Delivery*
Load Date                          *Unpacking*                       7.6e+1

| QTY ARTICLE | ROAD | ft3 | QTY ARTICLE | ft3 |
|---|---|---|---|---|
| **Living Room** | | | | |
| 1 Bench | | 5.0 | 1 Buffet (Top) | 20.0 |
| 1 Buffet,Sideboard | | 30.0 | 1 Cabinet, Large | 45.0 |
| 5 Chair, Dining | | 5.0 | 5 Chair, Arm | 8.0 |
| 1 Desk Chair | | 5.0 | 1 Desk, Office | 30.0 |
| 2 Piano, Grand | | 80.0 | 2 Rug or Pad,Large | 10.0 |
| 2 Sofa | | 40.0 | 1 Table, Coffee | 5.0 |
| 2 Table | | 10.0 | 1 Table, Dining | 30.0 |
| 6 Mirror Carton | | 2.0 | 5 Carton, 1.5 PBO | 1.5 |
| 6 Carton, 3.0 PBO | | 3.0 | 10 Dishpack PBO | 10.0 |
| 2 Wardrobe PBO | | 10.0 | 1 GRINDER | 20.0 |
| 1 EASLE | | 7.0 | 1 Crate 38x 70x 6 | 10.0 |
| 2 PLANTER | | 3.0 | 1 Crate 24x 62x 4 | 4.0 |
| 719.5 ft3 | 5037 lb | | | 61 |
| **Family Room** | | | | |
| 5 Breakfast Chair | | 5.0 | 1 Breakfast Table | 10.0 |
| 1 Buffet,Sideboard | | 52.0 | 2 Chair, Arm | 10.0 |
| 1 EntertainmntCntr | | 41.0 | 1 Rug or Pad,Large | 10.0 |
| 2 Sofa-Section | | 20.0 | 1 Sofa, Loveseat | 30.0 |
| 9 Table, Small | | 7.0 | 1 Table | 14.0 |
| 1 TV | | 16.0 | 6 Carton, 1.5 PBO | 1.5 |
| 10 Carton, 3.0 PBO | | 3.0 | 9 Dishpack PBO | 10.0 |
| 1 BELLSTAND | | 10.0 | 1 Crate 25x 14x 29 | 6.0 |
| 1 Crate 50x 78x 8 | | 19.0 | 1 Crate 46x 56x 4 | 6.0 |
| 1 Crate 21x 21x 18 | | 5.0 | | |
| 516.0 ft3 | 3612 lb | | | 55 |
| **Entryway** | | | | |
| 1 Buffet (Top) | | 20.0 | 1 Buffet,Sideboard | 30.0 |
| 2 Cabinet, Large | | 51.0 | 1 Piano Bench | 5.0 |
| 2 Table, Small | | 2.0 | 1 TV Portable | 4.0 |
| 5 Dishpack PBO | | 10.0 | 2 PLANTER | 3.0 |
| 221.0 ft3 | 1547 lb | | | 15 |
| **Kitchen** | | | | |
| 6 Breakfast Chair | | 5.0 | 1 Breakfast Table | 10.0 |
| 2 Buffet (Top) | | 20.0 | 2 Buffet,Sideboard | 36.0 |
| 1 Cabinet, small | | 17.0 | 1 File Cab, 2-3 dr | 10.0 |
| 1 Mirror Carton | | 2.0 | 16 Carton, 1.5 PBO | 1.5 |
| 15 Carton, 3.0 PBO | | 3.0 | 10 Dishpack PBO | 10.0 |
| 350.0 ft3 | 2450 lb | | | 55 |
| **Hallway** | | | | |
| 1 Mirror Carton | | 2.0 | 7 Dishpack PBO | 10.0 |
| 72.0 ft3 | 504 lb | | | 8 |
| **Master Bedroom** | | | | |
| 1 Bed, Queen | | 65.0 | 3 Cabinet, small | 10.0 |
| 1 Cabinet, Curio | | 10.0 | 1 Cabinet, Large | 84.0 |
| 1 Chair, Arm | | 10.0 | 1 Chest of Drawers | 19.0 |
| 1 Lamp, Floor | | 3.0 | 2 Table, Small | 2.0 |
| 1 Table | | 10.0 | 9 Mirror Carton | 2.0 |
| 37 Carton, 3.0 PBO | | 3.0 | 4 Dishpack PBO | 10.0 |
| 10 Carton,Books PBO | | 6.0 | 21 Wardrobe PBO | 10.0 |
| 2 Mattress Qn/King | | | 1 CHEST | 15.0 |
| 1 SINK | | 30.0 | | |
| 719.0 ft3 | 5033 lb | | | 97 |
| **2nd Bedroom** | | | | |
| 1 Bed, Queen | | 65.0 | 1 Desk Chair | 5.0 |
| 1 Desk, Office | | 30.0 | 1 EntertainmntCntr | 25.0 |
| 1 Stool | | 5.0 | 2 Table, Bedside | 10.0 |
| 1 TV | | 11.0 | 2 Mirror Carton | 2.0 |
| 5 Carton, 1.5 PBO | | 1.5 | 15 Carton, 3.0 PBO | 3.0 |
| 4 Wardrobe PBO | | 10.0 | 2 Mattress Qn/King | |
| 257.5 ft3 | 1803 lb | | | 36 |
| **3rd Bedroom** | | | | |
| 1 Bed, Queen | | 65.0 | 1 Chair, Arm | 10.0 |
| 1 Chest, Armoire | | 30.0 | 2 Table, Bedside | 5.0 |
| 1 TV | | 13.0 | 2 Mirror Carton | 2.0 |
| 5 Carton, 3.0 PBO | | 3.0 | 6 Carton,Books PBO | 6.0 |
| 2 Mattress Qn/King | | | | |
| 183.0 ft3 | 1281 lb | | | 21 |
| **Bathroom** | | | | |
| 1 Cabinet, small | | 10.0 | | |
| 10.0 ft3 | 70 lb | | | 1 |
| **Laundry Room** | | | | |
| 1 Dryer, Gas | | 25.0 | 1 Washing Machine | 25.0 |
| 5 Carton, 3.0 PBO | | 3.0 | 1 Wardrobe PBO | 10.0 |
| 75.0 ft3 | 525 lb | | | 8 |
| **Garage** | | | | |
| 1 Bicycle,Exercise | | 7.0 | 1 Ladder, Step | 3.0 |
| 1 Vacuum Cleaner | | 5.0 | | |
| 15.0 ft3 | 105 lb | | | 3 |
| **STORAGE ROOM** | | | | |
| 7 Chair | | 8.0 | 1 Glider - Settee | 20.0 |
| 3 Shelving | | 15.0 | 1 Table | 10.0 |
| 5 Mirror Carton | | 2.0 | 20 Carton, 1.5 PBO | 1.5 |
| 50 Carton, 3.0 PBO | | 3.0 | 20 Carton,Books PBO | 6.0 |
| 1 Wardrobe PBO | | 10.0 | | |
| 421.0 ft3 | 2947 lb | | | 106 |

SHIPPER INVENTORY                          03/26/03    Ref: _____   2

| QTY ARTICLE          ROAD | ft3 | QTY ARTICLE | ft3 |
|---|---|---|---|
| **EXERCISE ROOM** | | | |
| 1 Cabinet, small | 17.0 | 1 File Cab, 4-5 dr | 20.0 |
| 1 Table, Small | 2.0 | 1 Table | 10.0 |
| 1 TV | 11.0 | 2 Weights | 2.0 |
| 2 Mirror Carton | 2.0 | 9 Carton, 3.0  PBO | 3.0 |
| 1 Dishpack      PBO | 10.0 | 7 Carton, Books PBO | 6.0 |
| 1 TREADMILL | 20.0 | 1 SCALE | 7.0 |
| 1 SASHE | 15.0 | | |
| 189.0 ft3     1323 lb | | | 29 |
| **PLAY ROOM** | | | |
| 1 Bench | 10.0 | 1 Bookcase | 20.0 |
| 2 Cabinet, small | 15.0 | 1 Cabinet, Curio | 10.0 |
| 1 Chair | 8.0 | 1 Chest of Drawers | 12.0 |
| 1 Dresser | 30.0 | 1 Sofa, Loveseat | 30.0 |
| 1 Table, Small | 2.0 | 2 Table | 10.0 |
| 1 TV | 10.0 | 3 Mirror Carton | 2.0 |
| 4 Carton, 3.0  PBO | 3.0 | 5 Carton, 4.5  PBO | 4.5 |
| 2 Dishpack     PBO | 10.0 | 9 Carton, Books PBO | 6.0 |
| 296.5 ft3     2076 lb | | | 36 |
| **4 TH BEDROOM** | | | |
| 1 Bed, Queen | 65.0 | 2 Cabinet, small | 10.0 |
| 1 Chest, Armoire | 30.0 | 1 Desk | 35.0 |
| 1 Table, Bedside | 4.0 | 1 TV Stand | 3.0 |
| 1 TV Portable | 4.0 | 3 Mirror Carton | 2.0 |
| 15 Carton, 3.0  PBO | 3.0 | 2 Dishpack      PBO | 10.0 |
| 6 Wardrobe      PBO | 10.0 | 2 Mattress Qn/King | |
| 298.0 ft3     2086 lb | | | 36 |

| | ROAD | Subtotals | 4342.5 ft3 | 30398 lb | 567 |
|---|---|---|---|---|---|

**CONTAINER SUMMARY**

| | | |
|---|---|---|
| 34 Mirror Carton | 8 Mattress Qn/King | 6 Crate __x_x__    48 |
| 52 Carton, 1.5  PBO | 171 Carton, 3.0  PBO | 5 Carton, 4.5  PBO |
| 50 Dishpack     PBO | 52 Carton, Books PBO | 35 Wardrobe      PBO   365 |

4342.5 ft3
TOTAL ESTIMATED WEIGHT ...... 34000 lb          TOTAL ITEM COUNT ......... 567

Agent _____ Date _____          Shipper _____ Date _____

**UNITED Van Lines**

RETURN TO:

United Van Lines, LLC
One United Drive
Fenton, MO 63026

OR

Your United Agent

# Claim Form

See reverse side for instructions

**ORDER FOR SERVICE NUMBER:**

Company Name: RICHARD FIELDS
New Address: 5615 SANDERLING RD   City: SARASOTA   State: FL   Zip: 34242
Old Address: 4968 EUCTOR   City: ORCUTAN LAKE   State: NY 40324
Home Telephone: 941 349 7471
Office Telephone: 862 206 0934

DID EMPLOYER PAY FOR MOVE? NO ☒ YES ☐   EMPLOYED BY ___

WHAT WAS DECLARED VALUE PROTECTION? NO ☐ YES ☐  60¢/LB. ☐  $1.25/LB. ☐  LUMP SUM ☐  LUMP SUM $ ___  FULL VALUE PROTECTION ☒

Delivery Date: 7/1/03   Pickup Date: / /

| Inventory number | Article weight | Article description | Description of loss / damage | Date of purchase/ Age of item | Cost to replace | Amount claimed | Carton damaged? Yes or No |
|---|---|---|---|---|---|---|---|
| 38 | 40 LBS. | END TABLE | SCRATCHED **SAMPLE** | 4 YRS | $275.00 | $50.00 | N/A |
| | | ARMOIR | | ANTIQUE | 1,000 | 1,000 | 7 |
| | | 3 (BRASS) HOODS | ARMOIR WARPED | ANTIQUE | 3,000 | 3,000 | |
| | | CURIO CABINET | CABINET | ANTIQUE | 2,000 | 500+ | |
| | | DEN CHEST | BROKEN PIECES | 11 | 1,000 | 1,000 | |
| | | SCONCES (2) | MISSING | 11 | 4,000+ | 4,000 | |
| | | SHIP PAINTING | MISSING | 11 | 3,000+ | ALL | |
| | | 2 PIECES LALIQUE | MISSING | 11 | 30,000 | | |
| | | GAFFU DESK | MISSING | 11 | ? | | |
| | | WATERFORD | MISSING | 11 | ? | | |
| | | ARMOIR (WORK) | WARPED | 11 | 13,000 | | |
| | | ANTIQUE MANDGAN | WARPED | 11 | 6,000 | | |

SIGNATURE OF CLAIMANT  X _____  DATE 3/09/04

See _____ attached

REMARKS

DOT REGULATIONS REQUIRE THAT ANY CLAIM FOR LOSS, DAMAGE OR DELAY MUST BE SUBMITTED IN WRITING TO CLAIMANT AND RECEIVED BY CARRIER WITHIN 9 MONTHS FROM DATE OF DELIVERY.

**HOME OFFICE USE ONLY**

C/S $ or R=repair | Expl. | Reap. party

WAS SHIPMENT IN WAREHOUSE? YES ☐ NO ☒

**UNITED** Van Lines

**Claim Form**

See reverse side for instructions

RETURN TO:

United Van Lines, LLC
One United Drive
Fenton, MO 63026

OR

Your United Agent

| ORDER FOR SERVICE NUMBER: 4 511 347-3

Customer Name: Richard Fleur
New Address: 7615 Standford Inn Sarasota FL 34274
Old Address: 4565 S Langhe Orchardlake MI 48324

Home Telephone
Office Telephone

Delivery Date 7/1/13
Pick-up Date

DID EMPLOYER PAY FOR MOVE? NO YES
WHAT WAS DECLARED VALUE PROTECTION? NO YES
EMPLOYED BY

$1.25/LB. LUMP SUM $ 50/LB. LUMP SUM $ FULL VALUE PROTECTION

WAS SHIPMENT IN WAREHOUSE? YES NO

HOME OFFICE USE ONLY

| 1 Inventory number | 2 Article weight | Article description | 3 Description of loss / damage | 4 Date of purchase/ Age of Item | Cost to replace | 5 Amount claimed | 6 Carton damaged? Yes or No | O/S $ or Re-repair | Expl. | Resp. party |
|---|---|---|---|---|---|---|---|---|---|---|
| 38 | 40 LBS. | END TABLE | SCRATCHED/SAMPLE | 4 YRS | $275.00 | $50.00 | N/A | | | |
| | | ANTIQUE CABINET | E3 MIRRORS MISSING | A-ANTIQUE ~10 YRS | 9,000 | ALL | | | | |
| | | TRANSITION BROKEN BY MOVERS | 5 YRS | 8,000 | ALL | | | | | |
| | | 4 DOORS | WARPED/DAMAGED | A-ANTIQUE | 8,000 | ALL | | | | |
| | | OAK CABINET | WARPED/DAMAGED | 9/ANTIQUE | 7,000 | ALL | | | | |
| | | OAK 2-STORY PIE LYLE CABINET | MISSING TOP | 3 YRS | 10,000 | ALL | | | | |
| | | PEDESTAL ACTUAL SIZE ANIMAL SCULPTURE | MISSING LEG | 5 YRS | 10,000 | ALL | | | | |

R E M A R K S

DATE 3/6/04

**SIGNATURE OF CLAIMANT** X
BOI-OI Rev. 2-02

**UNITED** Van Lines

RETURN TO:

United Van Lines, LLC
One United Drive
Fenton, MO 63026

OR

Your United Agent

**Claim Form**

See reverse side for instructions

**ORDER FOR SERVICE NUMBER:** 511-3473

Customer Name: Richard Fields

New Address: 7615 Sandhills Grasson Rd. 34742

Old Address: 4569 Elwylle Orange Lake Fl. 98322

DID EMPLOYER PAY FOR MOVE?  NO  YES

WHAT WAS DECLARED VALUE PROTECTION?  NO  YES

Home Telephone

Office Telephone

Delivery Date: 7/1/03

Pickup Date: / /

WAS SHIPMENT IN WAREHOUSE?  YES  NO

EMPLOYED BY

FULL VALUE PROTECTION  LUMP SUM $  $1,250/LB.  60¢/LB.

| 1 Inventory number | 2 Article weight | Article description | 3 Description of loss / damage | Date of purchase/ Age of Item | 4 Cost to replace | 5 Amount claimed | 6 Carton damaged? Yes or No |
|---|---|---|---|---|---|---|---|
| 38 | | END TABLES ALL ITEMS IN STORAGE NOT LISTED | MISSING BADROKN WARPED DAMAGED | $ 15/YRS AA | $ 300,000 | $ 350,000 ALL + | WAS |

**HOME OFFICE USE ONLY**

OSS Stor/ Repair  Expl.  Resp. party

SIGNATURE OF CLAIMANT  X _____   DATE 3/29/04

SC-01 Rev. 8-02

**UNITED** Van Lines

**Claim Form**

See reverse side for instructions

RETURN TO:

United Van Lines, LLC
One United Drive
Fenton, MO 63026

OR

Your United Agent

**ORDER FOR SERVICE NUMBER:** 4 511-342-3

Customer Name: Richard Fields

New Address: 7615 Sanderling Rd, Ellenton

Old Address: 4569 Ellengate

Home Telephone: 941-349-2422

Main: Sanderling Rd 34208

City: Ellenton, FL 34234

Delivery Date: / /

Pick-up Date: / /

Office Telephone: 18 206 0934

DID EMPLOYER PAY FOR MOVE?  NO ☐  YES ☐        EMPLOYED BY

WHAT WAS DECLARED VALUE PROTECTION?  NO ☐  YES ☐

$1.25/LB. ☐   LUMP SUM $ ☐   60/LB. ☐   FULL VALUE PROTECTION ☐   LUMP SUM $ ☐

WAS SHIPMENT IN WAREHOUSE?   YES ☐  NO ☐

HOME OFFICE USE ONLY

| 1 Inventory number | Article weight | 2 Article description | 3 Description of loss / damage | 4 Date of purchase/ Age of item | Cost to replace | 5 Amount claimed | 6 Carton damaged? Yes or No | C/S $ or Re=repair | Expl. | Reap. party |
|---|---|---|---|---|---|---|---|---|---|---|
| 38 | 40 LBS. | END TABLE | SCRATCHED **SAMPLE** | 4 YRS | $275.00 | $50.00 | N/A | | | |
| | | Drum Coffee Tbl | MISSING | 5 YRS | 16,000 | ALL | | | | |
| | | Love Seat | RIPPED | ANTIQUE | 4,000 | | | | | |
| | | Exer Wood Armoire | WARPED MISSING PIECES | " | 5,000 | | | | | |
| | | Ped. Table | MISSING | A. MTRE | 1,000 | | | | | |
| | | Large TheRUP Armoire | CHIPPED DING WARPED | " | 19,000 | | | | | |
| | | Piano | WARPED CHIPPED | 10 YRS | 15,000 | | | | | |
| | | Dragon wall Gabinet | WARPED, CHIPPED | ANTIME | 7,000 | | | | | |
| | | 2 Delft light | MISSING PIECES, WARPED | " | 6,000 EACH | | | | | |
| | | Armoire | | | 1,000 | | | | | |
| | | Rug Original | Repair MISS | 7 YRS | 7,000 | | | | | |
| | | 4 Poster Bed | + MISSING Pieces | | | | | | | |

Please See accompanying documents

R E M A R K S

TO THE CARRIER OF THE ABOVE SHIPMENT...

DOT REGULATIONS REQUIRE THAT ANY CLAIM FOR LOSS, DAMAGE OR DELAY MUST BE SUBMITTED IN WRITING BY CLAIMANT AND RECEIVED BY CARRIER WITHIN NINE MONTHS OF DELIVERY.

**SIGNATURE OF CLAIMANT X** _(signature)_        DATE: 7/25/01

80-01 Rev. 2-98

# EXHIBIT "I"



March 29, 2004

**VIA UPS/OVERNIGHT DELIVERY**

Dr. & Mrs. Richard Fields
7615 Sanderling Rd.
Sarasota, FL  34242

**FILE COPY**

**Re: United Van Lines, LLC Order No.: 511-347-3**

Dear Dr. & Mrs. Fields:

This will acknowledge receipt of your correspondence dated March 29, 2004. Included with the letter were a four page Claim Form and nine pages of hand written notes purporting to be additional items claimed as damaged. You have submitted this information as your claim against United Van Lines, LLC ("United") for alleged cargo loss and damage under the above order number.

You have also included a document you allege provides proof of insurance on your items in mini-storage and issued to you by Corrigan. It is United's position that your claim as presented on March 29, 2004 is insufficient to be considered a valid claim for any purpose. It is also United's position that the Evidence of Increased Carrier or Warhouseman's Obligation you reference in your letter is not a valid document for creating any contractual duties or rights between any of the parties involved in this matter. In order to explain United's position, a review of this matter to date and federal law is appropriate.

**Evidence of Increased Carrier or Warehouseman Obligation is Invalid**

In your March 29, 2004 letter you reference a "misleading insurance plan" allegedly sold to you by Corrigan Moving Systems ("Corrigan") as your items went into mini-storage. You allege this plan allows you until September 2004 to file a claim for any cargo loss or damage. You have been told by Mr. Baer and myself, several times over the phone and in writing (See my letters to you and Mr. Grant dated March 23, 2004 and March 25, 2004) the same thing in regards the filing deadline. The nine-month claim filing period cannot be extended unilaterally by one of the parties, by mutual agreement of both parties, or by judicial decree. The Evidence of Increased Carrier or Warehouseman Obligation ("Evidence") which you have included in your most recent letter was never intended to, nor does it state that it does extend the 9-month period.

Dr & Mrs. Richard Fields
March 29, 2004
- 2 –

In conversations you had with Mr. Baer on February 23rd and 25th, you even indicated that you decided not to purchase the evidence as the deductible made it impractical. The fact that the copy of the evidence you forwarded contains no property owner signature is further evidence the document has no force and effect. Consequently, any argument that you or your wife relied upon the evidence to protect your items in storage beyond the nine month claim filing period is erroneous.

**Your Claim as Submitted on March 29, 2004 is not a Proper Written Claim**

There are specific requirements a shipper must meet to file a proper written claim. The code of federal regulations states:

**Section 1005.2 (b) Minimum filing requirements**

A communication in writing from a claimant, filed with a proper carrier within the time limits specified in the bill of lading or contract of transportation, and (1) containing facts sufficient to identify the baggage or shipment (or shipments) or property involved, (2) asserting liability for alleged loss, damage, injury or delay and (3) making claim for the payment of a specified or determinable amount of money, shall be considered as sufficient compliance with the provisions for filing claims embraced in the bill of lading or other contract of carriage. 49 C.F.R. §370.3 (b).

The minimum filing requirements are provided on the back of each Presentation of Claim for Loss and Damage Form. Federal courts which have considered the question of timely filed claims, have required strict compliance with federal claim filing requirements. <u>Automotive Assoc. Inc. v. Bill's Trucking Service</u>, 789 F. Supp. 986 (Dd. Min. 1992); <u>Nedlloyd Lines v. Harris Transp.</u>, 922 F.2d. 905 (Mass. 1991); <u>Pathway Bellows, Inc. v. Blanchette,</u> 630 F. 2d 900 (2nd Cir. 1980), <u>cert. Denied</u>, 450 U.S. 915 (1981).

In <u>Pathway Bellows</u>, the Second Circuit Court of Appeals held that the plaintiff's claim was untimely when it was received **one day** after the nine month claim filing period had passed, even though the carrier had actual knowledge of the damage and had obtained an inspection report on the damaged goods. The court reasoned that the purpose of the written claim requirement was "to provide the carrier with some guidance as to what constitutes a claim, so that a carrier may know one when it sees one" <u>Pathway Bellows</u> at 904.

In addition, the Code of Federal Regulations also provides that the following documents **do not** constitute a proper claim: bad order reports, appraisal reports or damage, notations of shortage or damage, or both, on freight bills, delivery receipts, or other documents, or inspections reports issued to carriers or by their inspection agencies. See 49 C.F.R. § 370.3 (c).

Dr & Mrs Richard Fields
March 29, 2004
- 3 –

Finally, United's operating tariff states that United shall not "voluntarily pay a claim…unless and until a formal claim in writing for a specified or determinable amount of money will have been filed…." Accordingly, United is specifically prohibited from voluntarily paying claims where a proper, written claim has **not** been filed. 49 C.F.R. §370.3 (a) & (d).

Handwritten notes supposedly outlining items in different rooms of your rental property, with no other information, are not sufficient to be a proper written claim. Similarly, a claim form stating, "ALL ITEMS IN STORAGE NOT LISTED" is insufficient to meet the criteria of being a proper written claim. (See claim filing requirements detailed above).

Your claim filing period ends 9 months from the date your items delivered to your rental property and mini-storage respectively. As you have been advised repeatedly, not only does a claim have to be filed with United within 9 months of delivery, but it must meet all other claim filing requirements as well. It is United's position that the information submitted via facsimile today, while within the 9-month claim filing period, is not a proper written claim. Among other things, your submissions lacks sufficient specific information to identify what is damaged or missing as well as the amounts claimed for the allegedly damaged or missing items. Any supplemental information provided to cure those deficiencies must be received by United within the 9-month claim-filing deadline or it will not be considered.

Very truly yours,

Eric K. Eickmeyer
Staff Attorney

35441